**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| Lonnie KOCONTES, | Case No.: 24-cv-1513-AGS-AHG |
|---|---|
| Plaintiff, | **ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS (ECF 2) AND DISMISSING COMPLAINT IN PART** |
| v. | |
| Razel GUIMBAOLIBOT, et al., | |
| Defendants. | |

Inmate Lonnie Kocontes, proceeding without an attorney, moves to proceed in forma pauperis, that is, without prepaying the court's filing fees. In this civil-rights suit under 42 U.S.C. § 1983, California Government Code section 845.6, and California state common law, he alleges that the catheter-related care he received in prison harmed him and violated his constitutional rights. At this early stage, the Court concludes that some of his allegations are legally sufficient. For the reasons below, the motion to proceed IFP is granted, and the complaint partially survives the mandatory screening.

**MOTION TO PROCEED IN FORMA PAUPERIS**

Parties instituting most civil actions in federal court must pay a filing fee of $405.[1] *See* 28 U.S.C. § 1914(a). A party may initiate a civil action without prepaying the required filing fee if the Court grants leave to proceed in forma pauperis. *See* 28 U.S.C. § 1915(a); *Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007).

To proceed IFP, plaintiffs must establish their inability to pay by filing an affidavit regarding their income and assets. *See Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015). Prisoners seeking to establish an inability to pay must also submit a

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $55. *See* 28 U.S.C. § 1914(a); Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023). The additional $55 administrative fee does not apply to persons granted leave to proceed IFP. *Id*.

"certified copy of the [prisoner's] trust fund account statement (or institutional equivalent) for" "the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2). If the prisoner has no assets, the Court assesses no initial payment. *See* 28 U.S.C. §§ 1915(b)(1) & (4). But a prisoner who proceeds IFP and has "more than $10 in his account" must still pay the $350 statutory fee in installments regardless of whether their action is ultimately dismissed. 28 U.S.C. § 1915(b)(2); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016).

With his motion, Kocontes provided a copy of his prison certificate and trust account statement. (*See* ECF 4.) During the six months before filing suit, Kocontes had an average monthly balance of $0.02 and average monthly deposits of $0.00. (*Id.* at 1.) And his available account balance was zero when he filed suit. (*Id.*) Kocontes has thus established an inability to prepay the required filing fee, and the Court grants his IFP motion. Although the Court assesses no initial payment, because he currently has less than $10 in his account, Kocontes must pay the full $350 filing fee in monthly installments equaling "20 percent of the preceding month's income credited" to his account "each time the amount in [his] account exceeds $10." 28 U.S.C. § 1915(b)(2).

## SCREENING

### A. Legal Standards

The Court must screen Kocontes's complaint and dismiss it to the extent that it is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See* 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b). "The standard for determining whether Plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). That is, a complaint must "contain sufficient factual matter" "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Kocontes's Allegations

Kocontes alleges he had prostate surgery at an outside hospital and was returned to

prison with a catheter the next day. (ECF 1, at 3.) He claims defendant California Correctional Health Care Services (CCHCS) failed to provide transportation to the hospital for a follow-up appointment, which he missed. (*Id.*)

On the night of that missed appointment, Kocontes experienced a "sudden gush of blood and tissue in his catheter bag, which he reported" to the prison clinic. (*Id.*) Defendant nurse Guimbaolibot eventually saw him, and Kocontes showed Guimbaolibot his catheter bag while "express[ing] concern about how little fluid had drained overnight, and point[ing] out that the bowl at the top of the bag was empty." (*Id.*) He told Guimbaolibot that "his pain had increased and he felt bloated." (*Id.*) Guimbaolibot "briefly glanced at the bag, gave [Kocontes] the ointment he requested, and told [Kocontes] if he continued to have concerns about the catheter to submit a health care services request form" before "terminating the examination." (*Id.*)

Kocontes returned to his cell where about an hour later "blood and urine began spewing from the end of his penis past the catheter tube." (*Id.*) His throat was still too hoarse from the throat tube used during surgery to yell for help; he began banging on his cell door, but no one was close enough to hear him. (*Id.* at 3–4.) "Realizing that the catheter was plugged and the only way to stop the flow under pressure was to remove it, [he] yanked out the catheter. This caused severe trauma to his penis, which continued to bleed." (*Id.* at 4.) Kocontes ended up going to the emergency room where "he was finally able to get someone's attention." (*Id.*) He "continues to experience burning and pain when urinating," and "has continuing anxiety about urinating because he never knows how severe the burning pain will be." (*Id.* at 4, 7.)

Kocontes alleges CCHCS failed to "evaluate whether the scarring inside [my] penis can be treated," and that "given his medical training, Guimbaolibot had to know what would happen to [Kocontes] when pressure in his bladder built up from the plugged catheter. His failure to ensure [Kocontes]'s catheter was promptly changed was reckless disregard." (ECF 1, at 7.) Kocontes claims defendants' failure to provide him adequate and immediate medical care in response to an obvious emergency (1) showed deliberate

indifference to a serious medical need in violation of the Eighth Amendment, (2) demonstrated a failure to summon medical care in violation of California Government Code section 845.6, and (3) amounted to intentional infliction of emotional distress under California common law. (*Id*. at 4, 6–7.)

**C.     Discussion**

**1.  *Eighth Amendment Deliberate Indifference***

Kocontes alleges that the defendants violated his Eighth Amendment rights with their deliberate indifference to his serious medical needs. To succeed, he must sufficiently allege: (1) "the existence of a serious medical need" and (2) the prison official's "deliberate indifference" to that need. *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014). Officials are deliberately indifferent when they "know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). This includes circumstances when officials "deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002). Kocontes brings deliberate-indifference claims against nurse Guimbaolibot and California Correctional Health Care Services.

a. *Nurse Guimbaolibot*

Kocontes's allegations with respect to the serious-medical-need prong are sufficient to survive the "low threshold" applicable at screening. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (2012); *see also Doty v. County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994) ("[I]ndicia of a 'serious' medical need include (1) the existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, (2) the presence of a medical condition that significantly affects an individual's daily activities, and (3) the existence of chronic or substantial pain.").

To succeed on the second prong, Kocontes must plausibly allege "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health or

4

safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Kocontes alleges that, "given his medical training, Guimbaolibot had to know what would happen to [Kocontes] when pressure in his bladder built up from the plugged catheter. His failure to ensure [Kocontes]'s catheter was promptly changed was reckless disregard." (ECF 1, at 7.) At this stage of the analysis, Kocontes plausibly alleges Guimbaolibot's deliberate indifference. Within one week of Kocontes's prostate surgery, he felt blood and urine gushing into his catheter, noticed the empty bag at the end of his catheter, and reported it all to Guimbaolibot. (*Id.* at 3.) Kocontes also described his increased pain and bloating to Guimbaolibot. (*Id.*) Yet Guimbaolibot allegedly failed to further inspect the catheter. (*Id.*) Guimbaolibot "briefly glanced at the bag," prescribed ointment, and "terminat[ed] the examination." (*Id.*)

Given all Kocontes allegedly reported, Guimbaolibot's purported cursory inspection of the catheter bag indicates a "failure to respond" to the "pain or possible medical need" associated with Kocontes's post-surgery catheter issues. *See Jett*, 439 F.3d at 1096. Further, roughly an hour after this appointment, "blood and urine began spewing from the end of [Kocontes's] penis past the catheter tube," (ECF 1, at 3), so Kocontes has plausibly alleged that there was "harm caused by the indifference." *See Jett*, 439 F.3d at 1096.

Taken together, Kocontes's allegations suggest Guimbaolibot "kn[ew] of" the serious risk to Kocontes's health and "disregard[ed]" the risk. Given these facts, and Guimbaolibot's medical training, Kocontes has reasonably alleged that Guimbaolibot "had to know what would happen" "when pressure in [Kocontes's] bladder built up from the plugged catheter." (ECF 1, at 7.) Thus, Kocontes has plausibly alleged deliberate indifference to his serious medical need.

b. *California Correctional Health Care Services*

Kocontes alleges defendant California Correctional Health Care Services failed to provide transportation to the outside hospital for his follow-up appointment and failed to

"evaluate whether the scarring inside [his] penis can be treated." (ECF 1, at 3, 7.) But CCHCS is an agency of the State of California, not a "person" subject to suit under § 1983, and thus has Eleventh Amendment immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (noting that the Eleventh Amendment "proscribe[s]" lawsuits against a "State or one of its agencies or departments"); *see also Dragasits v. California*, No. 16cv1998-BEN (JLB), 2016 WL 6804947, at *3 (S.D. Cal. Nov. 15, 2016) ("California's Department of Corrections and Rehabilitation and any state prison, correctional agency, sub-division, or department under its jurisdiction, are not 'persons' subject to suit under § 1983").

Absent a waiver, the "Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). "The State of California has not waived its Eleventh Amendment immunity with respect to claims for money damages brought under § 1983 in federal court, and the Supreme Court has held that § 1983 was not intended to abrogate a State's Eleventh Amendment immunity." *Brown v. California Dep't of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009).

But the Eleventh Amendment does not bar claims for injunctive relief against state officials in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) ("a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983"). To the extent Kocontes seeks injunctive relief to require CCHCS to "evaluate whether the scarring inside [his] penis can be treated," CCHCS is not a proper defendant for such a claim. (*See* ECF 1, at 7.) When a plaintiff seeks prospective injunctive relief, the proper defendant is the official responsible for ensuring that the injunctive relief is carried out. *See Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013) (recognizing that a plaintiff seeking injunctive relief must "name the official within the entity who can appropriately respond to injunctive relief").

Kocontes has not named a defendant with authority to require CCHCS to medically

evaluate him. *See, e.g.*, *Pouncil v. Tilton*, 704 F.3d 568, 576 (9th Cir. 2012) (noting plaintiffs must name the person "responsible for ensuring that injunctive relief" is "carried out, even if he was not personally involved in the decision" underlying plaintiffs' claims); *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court.").

Thus, the Eighth Amendment deliberate-indifference claim against defendant CCHCS is dismissed.

### 2. *Cal. Gov't Code § 845.6*

Kocontes also asserts claims against CCHCS and Guimbaolibot under California Government Code section 845.6. (ECF 1, at 6.) That statute creates liability for any "public employee," as well as "the public entity where the employee is acting within the scope of his employment," "if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." Cal. Gov't Code § 845.6.

a. *California Correctional Health Care Services*

CCHCS is allegedly a "division of" the California Department of Corrections and Rehabilitation, (ECF 1, at 2), which is an "arm[] of the" California "state government," *see Bennett v. California*, 406 F.2d 36, 39 (9th Cir. 1969). Absent a waiver, the "Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei*, 488 F.3d at 1147. And states only waive their Eleventh Amendment immunity when they waive it with "the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (cleaned up). Further, states' consent to suit in courts of their "own creation" does not indicate "consent to suit in federal court." *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999). Nor does authorization to generally "sue and be sued" or be sued "in any court of competent jurisdiction." *Id.*

(cleaned up).

In section 845.6, California authorized lawsuits against a "public entity" when its "employee is acting within the scope of his employment." Cal. Gov't Code § 845.6. But the statute makes no mention of lawsuits in federal court, so one "reasonable [statutory] construction" is that California only consented to lawsuits in its own state courts. *See Edelman*, 415 U.S. at 673. Because there is no "express language" or "overwhelming implication[]" that California waived its Eleventh Amendment immunity, Kocontes's 845.6 claim against CCHCS is barred. *See College Sav. Bank*, 527 U.S. at 676.

b. *Nurse Guimbaolibot*

Kocontes's section 845.6 claim against Guimbaolibot, however, is not barred by the Eleventh Amendment. *See Jett*, 439 F.3d at 1093 (allowing a section 845.6 claim in federal court against California prison medical professionals). To succeed on a section 845.6 claim, California state intermediate courts and the Ninth Circuit U.S. Court of Appeals agree that plaintiffs must establish "three elements: (1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care." *Jett*, 439 F.3d at 1099 (citing Cal. Gov't Code § 845.6); *Castaneda v. Department of Corr. & Rehab.*, 151 Cal. Rptr. 3d 648, 663 (Ct. App. 2013). The courts disagree, however, about the scope of the second and third elements—and this case lies at the crux of that disagreement.

i. *Ninth Circuit Court of Appeals' Analysis*

In *Jett*, the Ninth Circuit held that defendants properly "summon" "immediate medical care" only when they "both diagnos[e] and treat[]" plaintiffs. 439 F.3d at 1099. The incarcerated plaintiff in *Jett* fractured his thumb, and an emergency-room doctor saw him that same day. *Id.* at 1094. Despite a referral to see an orthopedic specialist "early th[at] week," the plaintiff did not see one until nearly six months later. *Id.* at 1094–95. By then, his "fracture had healed improperly." *Id.* at 1095. During those months, the plaintiff had a series of medical appointments for his hand, but none with orthopedic specialists. *Id.* at 1094–95. The *Jett* court ruled that the defendants "violated § 845.6 if they had

knowledge of [plaintiff]'s need for immediate medical care to set and cast his fracture and did not summon such care." *Id.* at 1099.

### ii. *California State Appellate Court's Analysis*

In *Castaneda*, however, a California appellate court found that *Jett*'s section 845.6 analysis "ignores California authority interpreting that statute" and "expand[s]" public-entity liability "beyond that contemplated by the Legislature." 151 Cal. Rptr. 3d at 666. The *Castaneda* state-prisoner plaintiff saw medical providers who thrice referred him to a urologist—including an "[u]rgent urology referral"—but he never saw one while in state custody. *Id.* at 653–54. The defendant prison then transferred him to Immigration and Customs Enforcement detention, and he spent his year in ICE detention requesting proper medical care, also to no avail. *Id.* at 654; *Hui v. Castaneda*, 559 U.S. 799, 802–03 (2010). Within one month of his release from detention, he was diagnosed with "penile cancer" and "had his penis amputated." *Hui*, 559 U.S. at 803. He died one year later. *Id.*

Plaintiff argued that *Jett*'s section 845.6 analysis required the state to "summon care that the prisoner 'actually need[ed].'" *Castaneda*, 151 Cal. Rptr. 3d at 665. But the California appellate court held that once the state agency "summoned" medical providers, to "examine" the plaintiff, "it summoned health care as contemplated by section 845.6." *Id.* at 664.

The California court reasoned that section 845.6 is "very narrowly written" and only authorizes causes of action for "failure to summon medical care," not for "malpractice in providing that care." *Id.* at 663; *see also Nelson v. State of California*, 188 Cal. Rptr. 479, 485 (Ct. App. 1982) (holding any failure to "provide necessary medication or treatment" once "summoned," "cannot be characterized as a failure to summon medical care").

### iii. *Controlling Interpretation*

"When interpreting state law," federal courts are "bound by the decision of the highest state court." *In re Kirkland*, 915 F.2d 1236, 1238 (9th Cir. 1990). But "[i]n the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other

9

jurisdictions, statutes, treatises, and restatements as guidance." *Id.* at 1239. Absent "convincing evidence that the highest" state court "would decide differently" than the state intermediate court, federal courts are "obligated to follow the decisions of the state's intermediate courts." *Id.* (cleaned up).

Notwithstanding these principles, United States district courts can only "disregard [Ninth Circuit] precedent" when "intervening [United States] Supreme Court authority is clearly irreconcilable with" the Ninth Circuit's earlier precedent. *Day v. Apoliona*, 496 F.3d 1027, 1031 (9th Cir. 2007). Otherwise, district courts are "bound by" the Ninth Circuit's holdings. *Id.*

The California State Supreme Court has not weighed in here on how courts should interpret section 845.6—it denied review of *Castaneda*. *See* 151 Cal. Rptr. 3d at 648. And the Ninth Circuit has not rescinded its *Jett* standard. *See Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 607–08 (9th Cir. 2019) (applying *Jett*). So, although this Court should look to *Castaneda* for "guidance" when interpreting section 845.6, it is "bound" by *Jett*. *See Kirkland*, 915 F.2d at 1239; *Day*, 496 F.3d at 1031. Thus, when the Ninth Circuit predicted how it believes California's highest court would interpret section 845.6 in *Jett*, it bound this Court with that interpretation.

      iv.   *Applying Jett*

Turning to the Ninth Circuit's application of the relevant three-part test, first, Kocontes sufficiently alleges that the statute implicates Guimbaolibot as a "public employee." (ECF 1, at 2 (Guimaolibot "is employed by the Calif. Dept. of Corrections + Rehabilitation")); *see Jett*, 439 F.3d at 1099. Further, Kocontes told Guimbaolibot about the blood and urine he felt gushing into his catheter, the surprisingly empty catheter bag, and his increased pain and bloating. (ECF 1, at 3.) So the claim survives the first *Jett* prong, as Guimbaolibot, a "public employee," "knew or had reason to know" of Kocontes's circumstance. *See Jett*, 439 F.3d at 1099.

Second, Kocontes's situation implicated a need for "immediate medical care" given he was in his post-prostate-operation period, in pain, and having catheter issues. (ECF 1,

at 3); *see Jett*, 439 F.3d at 1099.

Finally, Guimbaolibot "failed to reasonably summon" immediate medical care as required by the Ninth Circuit. *See Jett*, 439 F.3d at 1099. As previously discussed, *Jett* held that section 845.6 requires defendants to "both diagnos[e] and treat[]" plaintiffs. *Id.* Here, Guimbaolibot "briefly glanced at the bag," prescribed ointment, and "terminat[ed] the examination." (ECF 1, at 3.) This failure to inspect the bag in conjunction with the fact that "blood and urine began spewing from the end of [Kocontes's] penis past the catheter tube" within roughly an hour of the appointment indicates a failure to properly "diagnos[e] and treat[]" the issue. (*Id.*); *see Jett*, 439 F.3d at 1099. Like in *Jett*, even though Kocontes saw a medical provider, Kocontes's allegations raise a question as to whether Guimbaolibot "had knowledge of" Kocontes's "need for [an] immediate" catheter evaluation but "did not summon such care." *See* 439 F.3d at 1099.

Consequently, Kocontes's section 845.6 claim against Guimbaolibot survives this Court's screening.

### 3. *Intentional Infliction of Emotional Distress*

Kocontes also alleges a state-law claim of intentional infliction of emotional distress against both defendants. (*See* ECF 1, at 7.) The claim fails against both.

First, his intentional-infliction claim against CCHCS fails because, as previously discussed, absent a waiver, the "Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei*, 488 F.3d at 1147. And courts "'indulge every reasonable presumption against waiver' of fundamental constitutional rights," including "[s]tate sovereign immunity." *College Sav. Bank*, 527 U.S. at 682 (quoting *Aetna Ins. Co. v. Kennedy ex rel. Bogash*, 301 U.S. 389, 393 (1937)). There is no evidence California has waived its Eleventh Amendment immunity for intentional-infliction-of-emotional-distress claims in federal court, so that damages claim against CCHCS is dismissed. *See Hobdy v. Los Angeles Unified Sch. Dist.*, 386 F. App'x 722, 724–25 (9th Cir. 2010).

Second, Kocontes's claim against Guimbaolibot fails because he has not alleged that

he has suffered sufficiently "extreme or severe emotional distress." *See So v. Shin*, 151 Cal. Rptr. 3d 257, 271 (Ct. App. 2013). The elements of a claim of intentional infliction of emotional distress are "(1) the defendant engages in extreme and outrageous conduct with the intent to cause, or with reckless disregard for the probability of causing, emotional distress; (2) the plaintiff suffers extreme or severe emotional distress; and (3) the defendant's extreme and outrageous conduct was the actual and proximate cause of the plaintiff's extreme or severe emotional distress." *Id.*; *see also Sabow v. United States*, 93 F.3d 1445, 1454 (9th Cir. 1996).

For the emotional distress to be sufficiently "extreme or severe," plaintiffs must experience "emotional distress of such substantial quality or enduring quality that no reasonable person in civilized society should be expected to endure it." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1004 (1993) (cleaned up). The "requisite emotional distress may consist of any highly unpleasant mental reaction such as fright, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment[,] or worry." *Fletcher v. Western Nat'l Life Ins. Co.*, 89 Cal. Rptr. 78, 91 (Ct. App. 1970). But mere "anxiety" is insufficient. *See Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009); *see also Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1246 (9th Cir. 2013) (holding that anxiety, sleeplessness, upset stomach, and muscle twitches alone do not rise to the level of "severe"). *But see Kelly-Zurian v. Wohl Shoe Co.*, 27 Cal. Rptr. 2d 457, 463 (Ct. App. 1994) (holding that "panic attacks consisting of anxiety, tightness in chest," "and heart palpitations" in addition to insomnia, post-traumatic stress disorder, and depression establish "substantial evidence of significant emotional distress").

Kocontes alleges here that he "has continuing anxiety about urinating because he never knows how severe the burning pain will be." (ECF 1, at 7.) But mere "anxiety" does not rise to the requisite "extreme or severe emotional distress" level, so his intentional-infliction claim against Guimbaolibot fails as well. *See Hughes*, 46 Cal. 4th at 1051.

### D. Leave to Amend

"A district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (quotation marks omitted). Because Kocontes's Eighth Amendment, California Government Code section 845.6, and intentional-infliction claims for damages against the California Correctional Health Care Services are barred, those claims are beyond repair and correspondingly dismissed without leave to amend.[2]

But it is not "absolutely clear" that Kocontes's intentional-infliction-of-emotional-distress claim against Guimbaolibot is beyond repair, so he may amend his complaint to correct the deficiencies identified in this order by February 14, 2025. If he files an amended complaint, he must replead any claims that he wants this Court to consider. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012). The Court "will consider those [original] claims to be waived if not repled." *Id.*

If Kocontes does not file an amended complaint by that date, his two surviving claims against Guimbaolibot still stand: (1) Eighth Amendment deliberate indifference and (2) California Government Code section 845.6.

## CONCLUSION

Accordingly, the Court:

1. **GRANTS** Kocontes's motion to proceed IFP.

2. **DIRECTS** the Secretary of the CDCR, or his designee, to collect the $350 filing fee from Kocontes's prison trust account in monthly payments equal to 20% of the preceding month's income each time the amount in his account exceeds $10, and forward those payments to the Clerk of the Court. 28 U.S.C. § 1915(b)(2).

---

[2] To the extent Kocontes seeks injunctive relief requiring CCHCS to "evaluate whether the scarring inside [his] penis can be treated," he may amend his complaint to name an appropriate defendant by February 14, 2025. (*See* ECF 1, at 7.)

3.      **DISMISSES** Kocontes's Eighth Amendment, California Government Code section 845.6, and intentional-infliction-of-emotional-distress claims against defendant California Correctional Health Care Services without leave to amend.

4.      **DISMISSES** Kocontes's intentional-infliction-of-emotional-distress claim against Guimbaolibot with leave to amend. If Kocontes would like to amend his complaint to address the deficiencies identified in this order, he must do so by February 14, 2025. Plaintiff's first amended complaint must be complete without reference to his original pleading. *See* CivLR 15.1(a). Any defendants not named and any claims not realleged in the amended complaint will be considered waived. *See Lacey*, 693 F.3d at 928.

5.      **DIRECTS** the Clerk of the Court to serve a copy of this order on Jeff Macomber, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California 94283-0001.

Dated:  January 3, 2025

_____
Andrew G. Schopler
United States District Judge